UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| APRIL TAPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:23-CV-198-REW-EBA |
| v. | ) | |
| | ) | |
| AMERICAN FIDELITY ASSURANCE | ) | OPINION & ORDER |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff April Tapp has brought a breach of contract claim against American Fidelity Assurance Company ("AFAC").  *See* DE 1-1 ¶¶ 10–15, at 6–7 (Complaint).  She alleges that AFAC improperly rescinded her husband's life insurance policy after he passed away in a work-related accident.  *See id.* ¶¶ 2–3, at 4–5.  AFAC stated that its rescission was sound, in large part because it would not have issued the policy if Plaintiff had accurately answered the medical question presented during the application process.  *See id.* ¶ 3, at 4–5.

AFAC now moves for summary judgment, asserting that the undisputed evidence demonstrates that it did not breach its agreement with Plaintiff.  *See* DE 23 (Motion).  Tapp responded in opposition to the motion, *see* DE 31 (Response), and AFAC replied, *see* DE 32 (Reply).  Ultimately, the Court concludes that summary judgment is warranted on Plaintiff's breach of contract claim.  As a result, the Court GRANTS DE 23.

## I.    BACKGROUND

On May 20, 2021, Plaintiff purchased an individual life insurance policy from AFAC on behalf of her husband, Mark Tapp, listing herself as the beneficiary.  *See* DE 1-1 ¶ 1, at 4.  The

policy at issue—AFAC's "jet issue" policy—is notable in that it "does not require applicants to provide any medical records at the time of applying, but instead relies on the applicant's accurate response to a handful of questions [asked by an AFAC representative], including one about the insured's recent medical history." *See* DE 23 at 2.  When completing the application, Plaintiff was asked by Timothy Adkins, an AFAC agent, whether:

> During the last six months, [her husband had] . . . been disabled (unable to perform the majority of normal activities of a person of like age and in good health) or received tests, treatment or care of any kind (excluding routine well care, childbirth with no complications, broken/fractured bones with full recovery or the flu) by a licensed member of the medical profession in a hospital or nursing home or received chemotherapy, hormonal therapy for cancer, radiation therapy, dialysis treatment, or treatment for alcohol or drug abuse?

DE 23-5 at 3 (Insurance Application).  Plaintiff answered "no."  *See id.*  However, medical records indicate that within the preceding six months, Mr. Tapp had received tests, treatment, and care, which was not routine well care, at the Middlesboro ARH Hospital.  *See* DE 23 at 9.  Most notably, in January of that year, he underwent an esophagogastroduodenoscopy ("EGD") with biopsy related to diagnosed dysphagia and a history of food bolus impactions.  *See* DE 23-6 at 1 (Operation Notes).  Plaintiff later testified that she was unaware of that fact at the time she completed the application and that, had she been aware, she would have answered the question differently.  *See* DE 23-3 at 25 (Tapp Deposition Exhibit).  Mr. Tapp also had an x-ray taken on his left hand in March of that year.  *See* DE 23-7 (Notice of Rescission).  After completing the application questions, AFAC approved Plaintiff's husband for coverage under the jet issue policy.  *See* DE 1-1 ¶ 1, at 4.

A little over one year later, Mr. Tapp was killed by malfunctioning equipment while working at his job in Middlesboro, Kentucky.  *See id.* ¶ 2, at 4.  Following his death, Plaintiff submitted a claim for benefits under the policy.  *See id.* ¶ 3, at 4–5.  AFAC subsequently notified

Plaintiff that it would not pay the benefits because it "did not have a proper opportunity to evaluate Mark Tapp as an insurance risk." *See* DE 23-7. AFAC instead rescinded the policy and refunded all premiums paid from the date of issuance. *See id.*

Plaintiff then filed suit against AFAC in state court, asserting claims for breach of contract and fraud/bad faith. *See* DE 1-1 ¶¶ 10–18, at 6–8. AFAC removed the case to federal court based on diversity jurisdiction, *see* DE 1 (Notice of Removal), and filed an answer to the complaint, *see* DE 7 (Answer). United States Magistrate Judge Edward B. Atkins bifurcated Plaintiff's breach of contract claim from her extra-contractual theories. *See* DE 18 at 5 (Bifurcation Order). And fact discovery closed on February 14, 2025. *See* DE 21 (Scheduling Order).

Approximately one month later, AFAC filed the present motion for summary judgment. *See* DE 23. AFAC argues that its rescission of the policy was proper under Kentucky law because Plaintiff failed to correctly answer a material question on the insurance application. *See id.* at 1. AFAC further contends that, had the question been answered accurately, the application would have been automatically denied under its underwriting rules. *See id.* Plaintiff filed a response in opposition, asserting that she did not make a fraudulent or material misrepresentation during the application process, and that AFAC failed to demonstrate that it would have denied her application had she answered the medical question differently. *See* DE 31 at 13–17. AFAC then filed a reply reiterating its arguments. *See* DE 32. The matter is now ripe for decision.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a)–(c). In determining whether there exists a genuine dispute of material fact, the Court must consider all facts and draw all inferences in the light most favorable to the non-moving

3

party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009).  Further, the Court may not "weigh the evidence [or] determine the truth of the matter" in evaluating whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing that there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986).  If the moving party satisfies its burden, the burden shifts to the non-moving party to produce "specific facts" that suggest a "genuine issue" for trial.  *See id.* at 2553.  Notably, this is "an affirmative duty to direct the Court's attention to those specific portions of the record upon which [the non-moving party] seeks to rely to create a genuine issue of material fact."  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).  If the non-moving party cannot make a showing sufficient to establish the existence of an essential element of their case, then "Rule 56(c) mandates the entry of summary judgment."  *Celotex*, 106 S. Ct. at 2552.

A fact is "material" when the substantive law that underlies the dispute identifies it as such.[1] *See Anderson*, 106 S. Ct. at 2510.  That is, "disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.  Factual

---

[1] While not in dispute, it is worth stating for completeness why Kentucky law is the applicable substantive law in this matter.  A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits.  *See Doe v. Etihad Airways, P.J.S.C.*, 870 F.3d 406, 435 (6th Cir. 2017).  Kentucky courts apply the "most significant relationship" test to breach of contract claims.  *See State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013).  Under that test, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties."  *Id.* (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 188(1) (1971)).  In making that determination, courts should consider "the place or places of negotiating and contracting; the place of performance; the location of the contract's subject matter; and the domicile, residence, place of incorporation and place of business of the parties."  *Id.* at 878–79.  Here, Plaintiff and her husband were domiciled in Kentucky.  The contract was entered into in Kentucky.  Plaintiff's husband passed away in Kentucky.  And Plaintiff filed her claim for benefits in Kentucky.  As a result, the Court agrees with the parties, finding that Kentucky has the most significant relationship to the contract at issue and applying Kentucky law.

disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" when "there is sufficient evidence favoring the [non-moving] party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 88 S. Ct. 1575, 1592 (1968)). Sitting in diversity jurisdiction, the Court must look to federal law to resolve procedural issues, and Kentucky law to resolve substantive ones. *Hanna v. Plumer*, 85 S. Ct. 1136, 1141 (1965); *Erie R.R. Co. v. Tompkins*, 58 S. Ct. 817, 822 (1938).

Summary judgment is also proper when the non-moving party's pleading fails to state a claim upon which relief can be granted. *See Carter v. Ford Motor Co.*, 561 F.3d 562, 567 (6th Cir. 2009). Although the analysis of a pleading's sufficiency at the summary-judgment stage resembles the analysis of a Rule 12(b)(6) motion, the two inquiries are not identical. *See id.* at 567–68. Generally, by the time that a party moves for summary judgment, the liberal federal discovery rules have brought "the gravamen of the dispute . . . frankly into the open for inspection by the court." *See id.* at 568 (quoting *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 789 (6th Cir. 2005)). Accordingly, district courts need not apply the more flexible plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–69 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009), when assessing the legal sufficiency of a claim at the summary-judgment stage. Instead, if the undisputed facts show that the plaintiff cannot establish a viable legal claim, summary judgment is warranted. *Cf. Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004).

III.    **ANALYSIS**

AFAC correctly notes that, under Kentucky law, an insurance policy may be voided if it is issued in reliance on an applicant's "[m]isrepresentations, omissions, [or] incorrect statements" that are either (1) material to the insurer's acceptance of the risk or to the hazard assumed, or

(2) such that the insurer, acting in good faith, would not have issued the policy if the true facts had been known.[2]  *See* KY. REV. STAT. ANN. § 304.14-110(2)–(3).  These provisions are meant to ensure that insurance applicants are "honest and forthright in their representations."  *Progressive N. Ins. Co. v. Corder*, 15 S.W.3d 381, 383 (Ky. 2000) (quoting *State Farm Mut. Auto. Ins. Co. v. Crouch*, 706 S.W.2d 203, 207 (Ky. Ct. App. 1986)).  The Court concludes that Plaintiff's failure to accurately answer the question about her husband's medical history, though innocent, was a misrepresentation.  *See Crouch*, 706 S.W.2d at 205–06.  Additionally, that misrepresentation was material, and AFAC would not have issued the policy if the true facts had been acknowledged in the application and known to AFAC.  As a result, summary judgment is warranted on both asserted grounds.

### A.  Plaintiff's Answer to the Medical Question was a Misrepresentation

Plaintiff argues that her answer to the medical question was not a misrepresentation, *see* DE 31 at 13–15, relevantly defined as "a statement as a fact of something which is untrue, which the insured states with the knowledge that it is untrue and with the intent to deceive, or which he states positively as true without knowing it to be true," *Aetna Ins. Co. v. Solomon*, 511 S.W.2d 205, 209 (Ky. 1974).  Specifically, Plaintiff asserts that her husband's recent tests, treatment, and care were sufficiently minor that her answer was accurate, *see id.* at 14–15, that the medical question was asked and phrased in an ambiguous manner, *see id.* at 13–14, and that she did not act with an intent to deceive, *see id.* at 15.  All three of these arguments fail.

---

[2] An insurance policy may also be voided if it is issued in reliance on the applicant's "[m]isrepresentations, omissions, [or] incorrect statements" based on fraud.  *See* KY. REV. STAT. ANN. § 304.14-110(1).  Plaintiff asserts that she did not make any fraudulent misrepresentations, *see* DE 31 at 15–16, and AFAC does not rely on subsection (1) to void the contract, *see* DE 32 at 6–7.

First, Plaintiff's failure to disclose her husband's EGD procedure rendered her answer to the medical question incorrect.[3]  While the medical question excludes "routine well care," an EGD is a significant procedure that falls outside the realm of routine care.  *Cf. Hays v. Jackson Nat'l Life Ins. Co.*, 105 F.3d 583, 585, 589 (10th Cir. 1997).  The report itself plainly shows that a specific medical concern (a history of impacted food bolus) motivated the procedure, which required anesthesia and was surgical.  *See* DE 23-6.  Going under for surgery is not, by definition, routine or well care.  Indeed, Plaintiff's earlier concession that she would have answered the medical question differently if she had known about the EGD makes this point clear from the applicant's perspective.  *See* DE 23-3 at 25.

Second, the medical question was not ambiguous or asked in an unclear manner.  Ambiguities in insurance contracts are to be construed in favor of the insured.  *See, e.g.*, *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984) (citing *Louisville Gas & Elec. v. Am. Ins. Co.,* 412 F.2d 908 (6th Cir. 1969); *Davis v. Am. States Ins.*, 562 S.W.2d 653 (Ky. Ct. App. 1977)).  However, insurance contracts necessarily reflect "the parties' mutual understanding at the time they entered into the contract and '[s]uch mutual intention is to be deduced, if possible, from the language of the contract alone.'"  *K.M.R. v. Foremost Ins. Grp.*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005) (quoting *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131–32 (Ky. 1999)).  Because the medical question is composed of clear and simple language, and because Adkins—the AFAC agent who asked Plaintiff the application questions—performed effectively, the Court relies on the terms of the agreement and the parties' mutual understanding alone.  Plaintiff's arguments to the contrary are again belied by her prior testimony, where she asserted that Adkins:  (1) spoke clearly during

---

[3] Plaintiff may be correct in asserting that the x-ray of her husband's hand was a non-issue given the medical question's explicit exclusion of tests, treatment, and care for broken and fractured bones.  *See* DE 23-5 at 3.  But that aspect is not the Court's focus or basis for decision.

the application process; (2) explained things in such a way that she never needed to ask for clarification; and (3) made clear that it was important to answer the questions accurately. *See* DE 23-3 at 27–28. Further, Plaintiff was able to view the application text, and she executed an acknowledgement of the company's "reliance upon the truthfulness" of her "responses to the questions contained in this application." *See* DE 23-5 at 4. The record defeats Plaintiff's argument.

Third, this Court has long recognized that, under Kentucky law, in the context of a misrepresentation, "an insurance company may void a policy . . . regardless of the applicant's intent." *Nationwide Mut. Fire Ins. Co. v. Nelson*, 912 F. Supp. 2d 452, 454 (E.D. Ky. 2012); *see also Cont'l Cas. Co. v. Law Offs. of Melbourne Mills, Jr., PLLC*, 676 F.3d 534, 539 (6th Cir. 2012); *Upton v. W. Life Ins. Co.*, 492 F.2d 148, 149 (6th Cir. 1974); *John Hancock Mut. Life Ins. Co. v. Conway*, 240 S.W.2d 644, 646 (Ky. 1951); *Hornback v. Bankers Life Ins. Co.*, 176 S.W.3d 699, 705 (Ky. Ct. App. 2005). Whether Plaintiff answered the medical question honestly does nothing to change that her answer was incorrect. And because that misrepresentation was material and directly led to AFAC's issuance of the policy, summary judgment is proper.

### B. Summary Judgment Is Warranted

#### 1. The misrepresentation was material to AFAC's acceptance of the risk and to the hazard assumed

Under Kentucky law, "a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of . . . insurance companies under similar circumstances, would not have accepted the application if the truth had been stated therein." *Cook v. Life Invs. Ins. Co. of Am.*, 126 F. App'x 722, 724 (6th Cir. 2005) (quoting *Mills v. Rsrv. Life Ins. Co.*, 335 S.W.2d 955, 958 (Ky. 1960)). AFAC asserts that a reasonable and natural insurer would not have issued the policy if Plaintiff had accurately represented her husband's medical

8

history.  *See* DE 31 at 9–13.  The Court agrees, and as such, determines that summary judgment is warranted under § 304.14-110(2).

Information about an applicant's recent hospital treatment and medical care directly informs an insurer's assessment of the risks and hazards associated with issuing coverage.  Here, the EGD procedure was an anesthetized surgery prompted by recent removal of an impacted food bolus and dysphagia (swallowing difficulty) from Mr. Tapp.  *See* DE 23-6.  Courts applying Kentucky law have, under the statutory rubric, consistently classified such information as material to the underwriting process.  *See, e.g.*, *Am. Gen. Life Ins. Co. v. Est. of Jude*, 825 F. App'x 261, 268 (6th Cir. 2020) (accepting that applicant made a material representation when he failed to disclose that his health condition and history had changed); *Mills*, 335 S.W.2d at 958 (finding that applicant made a material misrepresentation when he incorrectly stated that he did not have diabetes); *Hornback*, 176 S.W.3d at 705 (concluding that applicant made a material misrepresentation when he answered that he had not been treated for heart disease, despite his recent treatment for congestive heart failure); *Bush v. S. Fin. Life Ins. Co.*, No. 2004-CA-344-MR, 2005 WL 434575, at *3 (Ky. Ct. App. Feb. 25, 2005) (same).  In line with that precedent, the Court finds Plaintiff's misrepresentation regarding her husband's recent tests, treatment, and care to be material.

Although Plaintiff raises two brief arguments challenging the materiality conclusion, neither is availing.  First, Plaintiff suggests that "any determination as to [her husband's insurability] should not be made from the [standpoint] of what was known at the time of the application," but rather, from the standpoint of what was known at the time of her husband's death. *See* DE 31 at 17.  Kentucky law makes clear, however, that the purpose of § 304.14-110, which wholly addresses "representations in applications," is to ensure that an insured party makes

accurate representations at the time of his or her application. *See Corder*, 15 S.W.3d at 383 (quoting *Crouch*, 706 S.W.2d at 207). Second, Plaintiff asserts that the severity of the misrepresented medical treatment should dictate materiality. Well, certainly the misrepresented facts must be material to the risk accepted or hazard assumed (or, for § 304.14-110(3) relief, must materially impact the decision to issue the policy). But that principle is built into the Court's conclusion, and Plaintiff's arguments do not otherwise persuade.[4]

## 2. If the true facts were known, AFAC would have denied the policy in good faith

Because AFAC established that it would have denied Plaintiff's application if she had answered the medical question accurately, summary judgment is independently warranted under § 304.14-110(3).[5] This provision asks the insurer-specific question of whether a party's coverage would have been denied in the absence of a misrepresentation. *See Cont'l Cas. Co.*, 676 F.3d at 537–38 (affirming grant of summary judgment for the insurer under § 304.14-110(3) based largely on "the testimony of [the insurer's] employee who stated that disclosure of the investigation would have led [the insurer] to take 'one of several potential restrictive underwriting actions in order to address potential exposure'"); *see also Est. of Jude*, 825 F. App'x at 268 ("A misrepresentation is also material if 'there is sufficient evidence that the insurance company would not have issued the

---

[4] Notably, AFAC did not provide evidence regarding the usual practice of insurance companies under like circumstances. But this does not, in and of itself, defeat § 304.14-110(2) relief. Kentucky courts have not always required specific, industry-wide proof to establish (2) materiality, particularly where an insurance application expressly requests medical-history information and the undisclosed information would plainly bear on risk in the company's manner of policy issuance. *See, e.g.*, *Hornback*, 176 S.W.3d at 704; *Bush*, 2005 WL 434575, at *3. Plaintiff did not raise this nuance in argument. And even if this lack of evidence did pose a concern, AFAC would still be entitled to relief under § 304.14-110(3).

[5] This inquiry largely parallels the § 304.14-110(2) inquiry, and courts have indeed recognized that "many of the reasons that support a determination of 'materiality' under . . . § 304.14-110(2) also support a holding that [a] misrepresentation satisfie[s] section (3) . . . as well." *Am. Gen. Life Ins. Co.*, 825 F. App'x at 268 (quoting *Cont'l Cas. Co.*, 676 F.3d at 539). To the Court, it seems that § 304.14-110(2) is more focused on what the objective insurer would have done in the absence of the misrepresentation, while § 304.14-110(3) is more focused on what the particular insurer would have done in the absence of the misrepresentation.

policy or would have issued a different policy if it had knowledge of [the insured's] actions and omissions . . . .'" (quoting *Cont'l Cas. Co.*, 676 F.3d at 539)).

In the present case, AFAC has produced undisputed evidence indicating that its jet issue policy relies on applicants' answers to a small number of screening questions, and that an applicant's affirmative response to the medical question renders him or her categorically ineligible for coverage. *See* DE 23 at 2. That denial appears to be automatic, with AFAC's application system simply stating that an "applicant is not eligible for insurance coverage" upon entry of such a response. *See* DE 23-1 at 11 (Adkins Deposition Exhibit); *see also* DE 23-2 at 7 (Appiah Deposition Exhibit) (affirming that "[i]f that portion of the general question had been marked yes, then that policy would have been declined"). Plaintiff does nothing to meaningfully dispute the deposition testimony indicating that AFAC would have denied the application if it had received accurate medical information. *See generally* DE 31. Further, given the categorical and consistent approach depicted under oath, nothing impugns the good faith of AFAC's standard process as to a policy of this type. Thus, after considering all of the evidence in the light most favorable to Plaintiff, it is apparent she is unable to prevail under the relevant Kentucky statutory authority. Accordingly, summary judgment is warranted under § 304.14-110(3) as well as § 304.14-110(2).

## IV.  CONCLUSION

For the stated reasons, the Court GRANTS DE 23. Defendant is awarded summary judgment on Plaintiff's breach of contract claim. The absence of contract liability almost certainly dooms the bifurcated aspect of the case. The parties shall file a joint report addressing that topic within seven (7) days.

This the 11th day of March, 2026.



Signed By:

*Robert E. Wier*

**United States District Judge**

11